Our final case this morning is number 20-1838 Morse v. Tran. Ms. Zimberlin. Good morning. There are nine reasons why the 2008 board's decision shows that it did not conduct an acceptable reconsideration. Number one, the 2008 board decision never cited to 3.156C. It's cited to 3.156A. Number two- Before you go through the nine, let's assume that there was error in the 2008 board decision. If there was, wasn't the remedy for that error by appeal, which was not taken to the Court of Appeals. However, 3.156C is an exception to finality. It was not necessary for him to appeal if he has a valid 3.156 claim based on new service department records. Doesn't Blubaugh answer that question by saying that if you don't appeal from the first decision that that becomes final, even if the first decision was predicated on 1.56C? Blubaugh does not answer the question presented here. The question here is, what is needed to show that a reconsideration occurred? Well, okay. But as to the finality point that you were making, doesn't Blubaugh answer that specific point, which is the question Judge Dyke was asking? Blubaugh also recognizes that 3.156C is an exception to finality. On the facts of that case, 3.156C did not apply, but Blubaugh never held that there was not an exception to finality if the right situation appeared. Going on with Blubaugh, Blubaugh did not focus on the issue of what the correct reconsideration. In Blubaugh, the DA never received new relevant service department records. The new records there, which was a Form 20, were not relevant to any matter in dispute. So this court was not required to adjudicate what a proper reconsideration must look like. The scope of a reconsideration review was not an issue. The parties agreed that VA had sufficiently considered the Form 20, and there was no claim that the Form 20 led to a duty to assist. The Blubaugh case did not go into any detail as to what constitutes a merits review of a claim, perhaps because it was obvious that the new service department record was so insignificant and had no bearing at all on the issues in that case. In Blubaugh, the requirements of C1 were not met. Here, by contrast, the new service records documenting stressors and combat were relevant to the reason for the 2002 denial. So you're saying that the only thing that can be reconsidered in a reopening is the aspect of the reopening that the Veteran has to be considered? Well, a reopening is not the same as a reconsideration, and that's a key point in this case. The primary difference between a reopening and a reconsideration is that in a reopening, there's no need to re-adjudicate the original claim. The effective date of a reopened claim is the date of the claim. Here, the reopened claim was filed in 2004. But if it's a reconsideration, then the claim that's reconsidered is the claim filed in 1999, so the issue becomes, why did the 2002 rater at the AOJ deny the claim? What was the missing element? Another difference is that the duty to assist in a reconsideration all relates to assistance for the original claim. Ms. Emberlin, this is Judge Bryson. The question I have is, in this case, the 2008 board found that Mr. Morse was not currently suffering from a disability. That normally is a requirement for granting relief of any sort, that you have a current disability. And why doesn't that, in and of itself, end to the end, and they made that determination based on all the evidence, including the service records and so forth. Why doesn't that end to the inquiry at that point and avoid the need for a retrospective examination as of the 2000 and 2008 board found that there was no disability as of 2006? That was the date of the VA exam that found there was no PTSD. The VA only looked at the best condition as of 2006, not from 1999 to 2002. Right, but what would it have done if it had done what you're suggesting, I take it, that they should have asked the question, even though he's not disabled now, as they found, he was disabled in 1999, 2000, and 2002, but what would the relief be? Because they're finding that he's not currently disabled. How does that give them a hook to say that he gets some kind of benefit? He is currently disabled, and he is currently... Right, he is now, but as of 2008, the board found that he was not disabled. So my question again is, doesn't that end the inquiry as far as the 2008 board is concerned? It does not. Why? Because if this case is remanded, then there are six things the VA should do differently. First, unless it agrees that Mr. Morse suffered from PTSD from 1999 to 2009, then it should order a retrospective exam where the examiner is asked to provide an opinion as to Mr. Morse's diagnosis for that entire time period. The VA should explain to the examiner that staged ratings can be considered. I believe that would answer your question as to what could happen. The claimant, Mr. Morse, suffered from PTSD, we know, from 1999 to 2002. It is possible for staged ratings to grant him benefits for that period, remove them from the period of 2006 unless that rating is changed, and then add them back as of the examiner that Mr. Morse is a combat veteran. The lack of this knowledge made a difference to the 2006 VA examiner. The VA should explain to the examiner that this verifies the stressor. The VA on remand must focus on the 2002 denial and the reason for that denial. The VA should identify 1999 as the earliest possible entitlement to benefit state. The VA should recognize that 3156C is an exception to the rule of finality, and the VA must reconsider the denial of the 2004 claim after its medical examiner is informed that combat has been verified. Counsel, it seems to me like you're still doing what Judge Bryson was concerned about. Even if we agree with you that the 2008 decision was wrong and should have looked at other things, how do we get around the fact that it's final? 3156C does not tell us explicitly what to do about an intervening denial. It tells us what to do for the original claim. The clear words of C1 speak about when VA first decided the claim, VA will reconsider the claim, and that's the 1999 claim, and that has never been done. That should happen. Once that's done, then, as I said, 3156C doesn't tell us what to do about the intervening denial. I think there are two alternatives for this court. It can order that the 2004 claim also be reconsidered in light of verified combat. The 2004 claim was denied because of the opinion of a VA examiner who found that the lack of combat trauma or symptoms made diagnosis of military-related PTSD impossible. Now that combat has been verified, Mr. Moore should not be denied any benefits because of the error of the VA in verifying combat. I did not understand you to have made that specific argument regarding the need to redo the adjudication based on his combat status before the Veterans Court. You mentioned in your brief before the Veterans Court that he was in combat, but I didn't think that you made that express argument. It's in the principal brief before this court. In this court, yes, but it wasn't before the Veterans Court as far as I could tell. There was no discussion of the combat presumption specifically before the Veterans Court. That is effect of the 2010 memo, which verified combat. That was the reason for the remand in 2017. Going back to the question of the intervening denial, one choice this court has, as I said, is to order that the 2004 claim also be reconsidered in light of the new service department records. In the alternative, this court can simply direct the AOJ to make an initial decision regarding the proper procedure to follow if there is an intervening denial. That denial is not a bar. If it had been a bar to any reconsideration, the Secretary would not have entered into the joint motion for remand in 2017. Could you help me understand what you say is the rule here? Suppose the board in 2008 had specifically cited 3.156C and held that there was no basis for relief under that section. Would you still be arguing that that 2008 decision was not foreclosing, later raising of the same point? If all they had done was cite to 3.156C, that would not have been enough. We would have to review the substance of the 2008 board's analysis and determine whether or not it reconsidered the 1999 claim. It looks like my time is up. Okay. Well, unless there are further questions, we'll hear from the government. Hearing no questions, we'll hear from Mr. Hellman. Good morning, Your Honors, and may it please the court. As the panel has already pointed out, Mr. Morse's challenge to the 2008 decision cannot be raised again through 3.156C. I guess their argument is that in 2008, and correct me if I'm mistaken about this, that they didn't raise the 3.156 argument and that the board didn't address the 3.156 argument and that what you have now is a different proceeding where that issue has been raised and that there shouldn't be any foreclosure as a result of the 2008 decision because it was addressing a different section of the regulations. So, certainly, we can't review later on every single error in the earlier decision, but is there anything to the argument that that just wasn't a 156C proceeding at all? No, Your Honor. The purpose of 3.156C is to put the Service Department records that were unavailable in front of the agency. The agency then has to consider those Service Department records. That's what happened here in 2008. So, earlier when Mr. Morse's claim was denied for lack of a stressor in 2002, there was no confirmation of the stressors. There's the 2005 Service Department records that were received. The board then looked at those. Now, the board didn't expressly state that it was doing it under both 3.156A and 3.156C, but it examined those records in light of the claim and that is all that's required for 3.156C. As Blue Ball points out, as Kaiser points out, it's a remedial regulation by the VA to make sure that the veteran is not denied the benefit of records that were missing or classified at the time that his or her claim was being adjudicated. That is what happened here with respect to those earlier records and that is all that the regulation requires. It doesn't give Mr. Morse an opportunity to then undo the finality of the 2008 decision years later. The board never said what it was doing exactly, but why did the board reopen in the first instance if it wasn't solely to look at the existence of the service connection? Well, that was the reason the board reopened because it received new service medical and personnel records that were unavailable. So, under 3.156, the veterans are allowed to present that and there are two pathways. One is if those records were previously unavailable and then result in an award of benefits, those benefits can be retroactive to the initial claim. Under 3.156A, if this is new and material evidence, the claim is reopened and service connection can be granted. Eventually, that's what happened. In 2009, Mr. Morse saw it reopening again and the and got a different medical diagnosis, gave him a medical exam, another medical exam, and then found that he did have PTSD and gave him an award of benefits in 2009. What he's trying to do now is go back using 3.156C when he, A, failed to appeal the 2008 decision, but then also sought to challenge that claim on the basis of clear and unmistakable error. Well, putting aside whether the 2008 decision is final, I mean, that's something that we need to consider, but what I'm trying to understand is Kaiser says that if new documents are provided, new service documents are provided, that you're only supposed to consider those to the extent they're relevant to a matter in dispute. As of that point in time, the fact of a PTSD diagnosis was not in dispute as the Veterans Court in this case found, right? I mean, the only thing that was in dispute is whether there was a service connection stressor, not whether he had sufficient stressors for PTSD generally. That's not quite true, Your Honor. The 2006, there was some medical evidence of PTSD, but there wasn't a VA PTSD diagnosis such that the only thing that was missing in 2002 was the verified stressor. I think Mr. Morse conflates the evidence in the record a bit to say, yes, there was some evidence of treatment for PTSD, but the VA never made a finding that he had a PTSD diagnosis in 2002. The Veterans Court here, the factual finding that there was a PTSD diagnosis as of 2002, right? Well, I believe that I'm trying to find the citation to the Veterans Court opinion where to address that, but the Veterans Court for that purpose, I think, assume that there was a PTSD diagnosis as of 2002. It said that the RO's March 2002 decision acknowledged the current PTSD disability as of 2002. I see that, Judge O'Malley, and the Veterans Court did say that. I think, again, to the extent that this court can't re-examine the factual findings, that is a factual finding that we have, but the... Yes, the VA, as I understand it, then conducted a subsequent medical examination in 2006, right, and found no PTSD as of that time? That's correct, Judge Bryson, yes. So, the way that I understand the Veterans Court to have addressed the whole question of whether the 2004 and subsequent events constituted a reopening or a reconsideration was that they called it a reopening, but in fact, they did everything that would have been required for a reconsideration. Is that your take on the Veterans Court's approach? Yes. They have the newly associated records. They examined those records, and that's sufficient under 3.156C1 to constitute reconsideration. I think the George case from the Veterans Court says it's a murky area, but certainly, Blue Ball, the definitive case on reconsideration says that that is all that's required. The veteran is given the benefit of those service department records now being before the examiner. That is what happened here. Let me ask you a question about this, the argument that Ms. Emberlin makes about stage rating. So, let's assume that, setting aside all findings and just assume facts, that he did have PTSD in 19, well, as of 2000 and 2002, but then by 2006, he did not, and then subsequently, he did. In other words, that his condition ebbed and flowed. What would be the appropriate way to look at his entitlement to benefits? She argues that stage ratings would be appropriate under those circumstances. I'm saying wipe all the procedural elements out of the picture and just look at this as if these were all fixed determinations. I'm not sure that that's so easy Judge Bryson, because one of the requirements for an award of benefits is a present disability. Right, and that was really what I was going to... As Emberlin is saying, I think that there are stage ratings are possible, but I had understood that as a predicate for even stage ratings, you have to have a present disability. Is that right, or am I... That is correct. That is one of the three quintessential requirements for benefits. One is an injury incurred in service, two is a present disability, and three is a nexus or service connection, as the court sometimes calls it. So, if the 2008 board were to conclude that he, in fact, did have PTSD back in 2002, but he doesn't have it as of now, the fact that he did not have a current disability would make it impossible for the 2008 board to grant relief. Is that right? That would seem right, Judge Bryson. I don't think there's been a case that has addressed that scenario. And the tricky thing is Section 3.156C is meant to kind of put the adjudicator back in terms of looking at missing service department records. So, if the veteran continuously had a present disability and then the records that were missing were associated with a file, he would get the benefits going back to that earlier effective date. But in this scenario where the disability ends, I think that one of the prerequisites of awarding any benefits wouldn't be met. My concern is that if you look at that 2006 examination, it's not really a situation where he said that the disability ended. In fact, under his analysis, he would say he never had PTSD because he says one of the primary bases for his conclusion is that the stressors identified weren't intense enough and that there was no combat stressor. So, therefore, there can't be PTSD. In other words, that examination rejected the specific findings of other stressors and of the symptoms of PTSD. So, it really wasn't a situation of him saying he doesn't have it presently. He said he never had it. Well, I would disagree, Judge O'Malley. I think the 2006 examination looked at the various and there's also stressors or there's also evidence of PTSD from other sources and this is at Appendix 91. The examiner mentions prior family history of alcoholism and abuse and suggests that the PTSD may derive from multiple sources. So, I think the examiner, he's not saying that Mr. Morse didn't at times have PTSD. What he's saying is that the service connection for PTSD from Mr. Morse's military service isn't present. And he does note the stressors. He notes that Mr. Morse at least talked about the stressors he experienced in his military service. So, are you saying they found he had PTSD in 2008? Are you saying they found he didn't have it? The medical opinion said he did not have it, although I think the qualification would probably be that he didn't have it for the purposes of the diagnosis for the benefits rating. So, he didn't have PTSD from his military service. That's what I'm saying. If you look at his analysis, his theory would be that he never had it for purposes of a benefit rating. Well, if you look at Appendix 94, Your Honor, his concluding statement says that it makes diagnosis of military related PTSD impossible. So, I don't think he would rule it out. That's just the service connection. That's my problem is that in 2008, they treat it as an actual diagnosis of no disability. But if you look what he's saying, he's just saying there's not a service-connected stressor. I see what you're saying, Judge. I don't think that makes a difference in terms of the 2008 rating opinion, though, because even if he still is not entitled to benefits in 2008 because he either doesn't have a present disability or he doesn't have a service-connected stressor. Mr. Hellman, let me bring you back to this question of what happens in 2008. Suppose we had a situation in which the board didn't mention the new service department records, even though they were before it. Suppose they just didn't consider them, say, hypothetically, they didn't think they were relevant, but they don't mention them at all in the decision. Where are we? Does that mean that the issue under 3.156C can be brought again in some later proceeding that the 2008 decision is treated as not resolving the service department retrospective analysis that would be required? Where are we? Well, I think if the records weren't relevant, then you're in the Kaiser situation where the VA doesn't have to reconsider. Well, I'm not saying they don't say anything. They don't say anything about whether they're relevant or not. They just don't mention them at all. So we don't know on the face of the opinion why they didn't discuss them, but they just don't discuss them. Does that mean that 3.156C, so now I'm entitled to start a new proceeding? Well, I think if the veteran can show that the records weren't considered, then it's essentially that, if I may finish, it's essentially the same situation as if reconsideration never took place. Now, that would be a factual determination for, I think, the Veterans Court to make, but if there's evidence that the records were present and just not found to be significant enough to mention, then the veterans still can't bring the claim. But if it's something that the records were associated with the claim file, but then, again, got lost in a drawer somewhere, then it could be a situation as if those records hadn't been reconsidered. The veteran mentions the records in the briefing to the board, but the board says nothing about the records in its decision. Where are we? Then, I think that if the records were noted to the board and the board didn't mention them, you'd be in the same situation. Similar situation here where the veteran would have to appeal that decision and say, well, the board didn't properly reconsider them under 3.156C. The veteran couldn't years later come back and say, well, they were never reconsidered. Okay. Thank you, Your Honor. We respectfully request that the case be affirmed. Okay. Any further questions? Okay. Hearing none, Ms. Zimberlin? Thank you. To respond to one of Judge Bryson's concerns, a present disability means a disability at any time the claim is pending. So, hypothetically, if a claimant files a claim in 2004, is disabled, is not disabled by 2008, the claimant still has a present disability in 2004 when the claim is filed. To respond to one of Judge O'Malley's concerns, if the 2006 examiner knew that combat had been verified, there's at least a reasonable possibility that the examiner would have found PTSD, and that's a major problem in the decision of the 2008 board. I think what the court needs to keep in mind is the very important difference between a reopening and a reconsideration. The secretary has argued that once the board examines the records, that's enough, but it's more than just an examining of the missing records. The key difference between the reopening and a reconsideration is the date that the VA looks at. Here, for the initial claim, the dates are 1999 to 2002, and that's not what the 2008 board was focused on. The 2008 board was focused on the 2004 claim. The secretary, in its brief, avoided taking position as to which of Mr. Morris' claims they're alleging were reconsidered in 2008. There are two possible claims. The 1999 claim or the 2004 claim. The board looked at the 2004 claim and was not concerned with the state of Mr. Morris' claim from 1999 to 2002. As held in Jones v. Wilkie, it's the original decision, which must be the focus. The original denial in 2002 has never been reconsidered by any VA reviewer, along with the new service records of 2005, 2006, and 2010. Subsection C serves to place the veteran in a position he would have been in had the VA considered the relevant service department records for the disposition of the earlier claim. No one disputes today. It looks like my time is up. Okay. Unless there are further questions? Hearing none, thank you, Ms. Zimberlin. Thank you, Mr. Hellman. The case is submitted. That concludes our session for this morning. The honorable court is adjourned until tomorrow morning at 10 a.m.